RIVER VALLEY, INC., et al. *v.* AMERICAN STATES INSURANCE COMPANY

85-193                                               699 S.W.2d 745

Supreme Court of Arkansas
Opinion delivered December 2, 1985
[Rehearing denied January 13, 1986.*]

---

*   Purtle, J., not participating.

*Walter Murray* and *William Frye*, for appellants Shrader Construction Co., Inc. and Shirley Excavation and Clearing, Inc., a Joint Venture, and Shirley Excavating and Clearing, Inc.

*Everett Martindale*, for appellant Central Industrial Electric Inc.

*Mike Moore*, for appellant Ben M. Hogan Company.

*Wood Law Firm*, by: *Doug Wood* and *Steven R. Davis*, for appellee.

GEORGE ROSE SMITH, Justice. This second appeal in related litigation comes to this court under Rule 29(1)(j). For our first opinion, see *B.G. Coney Co. v. Radford Petroleum Equipment Co.*, 287 Ark. 108, 696 S.W.2d 745 (1985).

B.G. Coney Company was the prime contractor for the construction of a shopping center in Little Rock. Coney failed to pay all its subcontractors and materialmen, some of whom are the present appellants. Coney had executed a $2,090,000 contractor's bond, on which the appellee, American States Insurance Company, was the surety. When the appellants filed their claims against the bond, the surety denied liability on the ground that the only obligees named in the bond were the developer of the shopping center and the bank which had financed it. The appellants responded by asking that the bond be reformed to conform to the terms of an earlier bond that would have covered the claims of subcontractors and materialmen. The chancellor refused the request for reformation, on the ground that it is not supported by clear and convincing evidence. The correctness of that decision is the principal issue on appeal.

The facts are almost undisputed. The first bond, signed on June 14, 1982, was a performance and payment bond. It would have covered the claims of the appellants and have complied with the pertinent statutes, including Ark. Stat. Ann. § 51-635 (Repl. 1971). The bank, however, refused to accept that bond, because the bank's financing agreement required that it be named as an obligee in the bond, and the only obligee in the first bond was the developer of the shopping center. That bond was accordingly marked VOID.

It was replaced by a second bond in the same amount and executed by the same local agent for the corporate surety, the appellee. That agent, however, instead of using the same bond form with an added obligee, selected a different form of bond, called a dual obligation bond, which provides that it protects only the developer and the bank. That bond was accepted by the obligees and is the one now sought to be reformed.

■ The testimony in favor of reforming the bond is so overwhelming, so nearly undisputed, that reformation must be granted. Both the local insurance agent and his employee, who signed the bonds, testified that the only reason for the substitution of the second bond was to add the bank as a second obligee. The bank's agent, Catlett, and the developer's agent, LaSusa, testified to the same effect. It was stipulated that Coney, the only other person involved in the execution and acceptance of the second bond, did not know that it would deprive subcontractors and others of the rights afforded by the first bond. Thus it is affirmatively shown that everyone involved in the transaction, without exception, mistakenly believed that the second bond was making no change except the addition of the bank as an obligee. This proof amply satisfies the requirement that it be clear and convincing.

■ Counsel for the appellee make two subordinate arguments on this point. It is insisted that the obligees accepted the second bond; its terms are therefore controlling. The answer, of course, is that the acceptance was qualified by the parties' mutual mistake. It is also argued that the basic contract between the contractor and the developer did not positively require a performance and payment bond, leaving the obligees free to accept the dual obligation bond. If, however, such a choice was open to the

obligees, the choice was made when the first bond was signed, since everyone understood that those terms would be embodied in the second bond. There is no evidence whatever that anyone intended for the second bond to omit the coverage now being claimed by the appellants.

Finally, the appellee argues on a different basis that the decree should at least be affirmed as to two of the appellants, Schueck Steel, Inc., and Lewis Trenching Company, because they supplied labor and materials to subcontractors rather than directly to the prime contractor. It is pointed out that even the first bond purported to protect only persons "who have contracts directly with the Principal [Coney] for labor or materials." The argument is that since Schueck and Lewis dealt with subcontractors, they have no cause of action against Coney or its surety.

The flaw in this argument is that a statutory bond must be construed in the light of the statutes. With respect to the same statute that is involved in this case, Section 51-635, *supra*, we analyzed a similar contention in *Sweetser Const. Co.* v. *Newman Bros.*, 236 Ark. 939, 371 S.W.2d 515 (1963). The essence of our analysis was that "one who supplies material to a materialman, who in turn supplies the subcontractor, is to be relegated to the status of a stranger to the original contract." Thus, for example, if Jones sells materials to Brown on the open market, and Brown then sells them to a subcontractor who incorporates them into the structure being built, Brown has a lien as a materialman, but Jones is too far removed.

Under that test both Schueck and Lewis have valid claims. Schueck sold steel to a construction company, which presumably used it in building the shopping center. Lewis dug trenches for a subcontractor who laid sewer pipe in them to serve the shopping center. In both instances there was sufficient privity of contract, for the claims had their origin in the original contract and grew out of that contract, as we said in *Sweetser*.

Reversed and remanded, the appellants' claims against the appellee to be allowed.

PURTLE, J., not participating.